IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MANDINGO PETTWAY,                :
      Plaintiff,                 :
                     :
vs.                             :          CIVIL ACTION 14-0495-WS-C
                     :
CYNTHIA STEWART, *et al.*,       :
      Defendants.               :

## REPORT AND RECOMMENDATION

Plaintiff Mandingo Pettway, an Alabama prison inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(a)(2)(R), and is now before the Court on Defendants' motion for summary judgment (Docs. 12, 13) and Plaintiff's response thereto (Doc. 15). For the reasons stated below, it is recommended that summary judgment be granted in favor of Defendants Stewart and King[1], and the claims presented by Plaintiff Mandingo Pettway be dismissed with prejudice.

## I.      Summary of Allegations.

Plaintiff is currently within the custody of the Alabama Department of Corrections ("ADOC") serving two consecutive life sentences for convictions of murder and two counts of first-degree robbery. (Doc. 1 at 6; Docs. 13-1; 13-3). Based on the nature of the crimes committed, the ADOC classified Plaintiff as a medium custody inmate, with a restricted "R" status, to be housed at a level four

---

[1]      Plaintiff has identified and named as a defendant in this action "Nautical King." (Doc. 1 at 5). The undersigned takes notice from the record that the correct name of Defendant King appears to be Nanciata King. (See Docs. 12 and 13 where Defendants identify the Classification Supervisor at G.K. Fountain Correctional Facility to be Nunciata King). In this report and recommendation the Court will refer to said defendant as Defendant King, Ms. King, or Classification Supervisor King, noting that Nunciata King is the intended defendant in this action.

correctional facility. (Doc. Doc. 15 at 8). Plaintiff's "R" offender classification restricts him from being eligible for lower security custody and the privileges that would accompany the same, such as work release or any off-property job. (Doc. 13 at 3; Doc. 13-3 at 3; Doc. 15 at 8). The Central Restriction Review Committee ("CRRC") is solely responsible for the classification of restricted offenders. (Doc. 13-4 at 1-2). The CRRC follows the procedure and categories found in the ADOC's Classification Manual to determine the restricted status of inmates. (Doc. 13-2 at 2). While the CRRC's restricted classification is not appealable, it may be reviewed by the CRRC upon the request of a classification specialist. (Doc. 13-3 at 4).

Notably, the record shows the classification of Plaintiff has been reviewed periodically during his incarceration. On June 29, 2012, Yvonne Johnson, a classification officer at ADOC's Draper Correctional Facility, requested the CRRC review and remove Plaintiff's "R" security status based on the 2010 revisions of the ADOC's Classification Manual. (Doc. 13-3 at 4). The CRRC completed the review but chose to uphold it's restricted offender status of Plaintiff. (*Id.*). The committee used the facts of Plaintiff's crime (mainly that he shot his victim multiple times) to determine that Plaintiff fell within the manual's criteria of a violent inmate, and pursuant to "number 9" of the pertinent section, CRRC is given discretion to review Plaintiff's case and provide a restricted status where warranted.[2]

---

[2]    The revised manual states that:

The following category of inmates will require review for the "R" suffix:
. . .

Plaintiff's classification was again reviewed by the ADOC on October 30, 2013.  (Doc. 15 at 8).  The classification review summary discloses that, in addition to the crimes for which Plaintiff is currently serving time, he also committed prior crimes of first-degree assault (beating and stabbing his victim) and throw/shooting into an occupied vehicle.  In Plaintiff's favor, however, the classification summary reveals that Plaintiff has not received a disciplinary report since March 23, 2012; he has completed classes including Anger Management, Personal Development, Self-Awareness, Cabinet Making, Cabinet Making-Tutor and has obtained certificates in Creative Writing and Long Distance Dads.  (*Id*.).  Plaintiff received a security level score of four and, despite his in-prison accomplishments, it was recommended that Plaintiff remain at a medium security, level four institution "due to consecutive life sentences" and "R" status that make him "ineligible for custody reduction lower than Medium." (*Id*.).

Plaintiff brings this § 1983 suit challenging his custody classification, specifically his "R" security restriction, alleging that he is due for parole consideration in July 2016, thus he is eligible, "same as the other inmates", for a custody change to minimum-in or minimum-out.[3]  (Doc. 1 at 4-5).  He is suing Classification Specialist King for violating his constitutional rights and discriminating against him on August 18, 2014, while housed at G.K. Fountain

_____

9 - Inmates with offenses which may or may not involve death but are of such a violent nature that restriction may be warranted will be reviewed on a case-by case basis.

(Doc. 13-3 at 5; *see also* ADOC Classification Manual, 5.4.3.1.1, p. 38).
[3]      Plaintiff asserts that an inmate must be within three years of his estimated end of sentence date or possible parole date "to be considered for min-in or min-out custody." (Doc. 1 at 4).

Correctional Facility ("Fountain").  Plaintiff claims King discriminated against and prejudiced him by treating him differently than other inmates when she failed to recommend his restricted status be removed.  (Doc. 1 at 4-5).  And, he is suing Fountain's Warden Stewart for being 'aware of the unlawful conduct of her subordinate[, King,] and fail[ing] to correct that unlawful conduct."  (*Id*. at 5).

Defendants have answered the suit, denying all allegations of violating Plaintiff's constitutional rights regarding his current classification level and asserting available defenses,[4] and filed a special report, evidencing that they have no authority to classify inmates as restricted offenders and that task is the responsibility of the CRRC.  (Doc. 13 at 2).  The Court has converted Defendants' filings to a motion for summary judgment.  (Doc. 14).  Plaintiff opposes the motion for summary judgment and submits that his risk assessment score of four, on October 30, 2013, dictates that he should be eligible for a lowered security status.  (Doc. 15).  After a thorough review of the record, the Court determines that this motion is ripe for consideration.

## II.      Summary Judgment Standard.

---

[4]      It is unclear from the complaint whether Plaintiff is suing Defendants in their official or individual capacities.  To the extent he bringing this action against Defendants in their official capacities, both defendants are immune from suit.  It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment.  *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); Free, 887 F.2d at 1557.

As to claims against the defendants in their individual capacities, Defendants may be entitled to qualified immunity.  Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  It is undisputed that Defendants were acting within the scope of their discretionary authority as prison officers at Fountain; thus, the Court will analyze whether or not Plaintiff has carried his burden of alleging a constitutional violation.  *See Id.*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").  Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen, supra*, at 1314 (""When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial."") internal citations omitted); *see Comer v. City of*

*Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the Court has viewed the facts in the light most favorable to Plaintiff.

*Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

## III.   Discussion.

Plaintiff complains that his risk assessment score of four that was determined on October 30, 2013, within three years of his parole consideration date, should make him eligible for a lower security level. (Doc. 15 at 2). He maintains that his behavior while imprisoned, maturity, education, class and program participation should carry weight in determining his classification not merely the elements of his committed crime. (*Id*. at 4). He challenges the denial of a lower security level claiming it is discriminatory, violating his Equal Protection rights, and is cruel and unusual punishment, in violation of the Eighth Amendment. (Doc. 1 at 5; Doc. 15 at 4).

### A.   Custody Classification.

Plaintiff contends that his prison record and completion of various rehabilitative programs entitles him to recommendation and/or receipt of a lower custody classification, and Defendants violated his constitutional rights by

not recommending or granting his restricted offender status be removed.  (Doc. 15 at 4).  This claim provides no basis for relief, as an Alabama prisoner has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988); *Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979).  An inmate "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison."  *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (per curiam) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976) (noting that Congress has given prison officials full discretion to control conditions of confinement, including prisoner classification)).  Consequently, prison officials may assign inmates to any security classification level they choose without necessarily violating any constitutional right of the inmates.  *See Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976).  Additionally, prison administration may assign a restricted "R" status to inmates and inmates have no constitutional right to have the same removed or to have their security custody level lowered.  *See Turpin v. Pittman*, 2013 U.S. Dist. LEXIS 166290 (M.D. Ala. Oct. 8, 2013) ("Because Turpin has no constitutional right to a specific classification and/or security status, correctional officials may change his classification for a good reason, a bad reason, or no reason at all. Thus, the decision to deny him medium-out custody

status and to classify and/or recommend he be reclassified as a restricted

offender does not violate his constitutional rights."); *King v. Boyd*, CASE NO.

2:10-CV-715-TMH[WO], 2012 U.S. Dist. LEXIS 185024 (M.D. Ala. Nov. 30, 2012)

(constitutional rights were not violated by classification of plaintiff as a restricted

offender and by refusal to recommend removal of the restricted status); *Johnson*

*v. Boyd*, 2011 U.S. Dist. LEXIS 86938 (M.D. Ala. May 26, 2011) ("The court need

not decide whether Plaintiff has been classified improperly because, even if his

classification is incorrect, his constitutional rights have not been violated.").

Even if the Court were to determine that the failure to recommend

Plaintiff's restricted offender status is a stated constitutional violation,

Defendants would be protected from suit pursuant to their asserted defense of

qualified immunity.  It is clear that Defendants were performing discretionary

functions as prison officers, and their denial of Plaintiff's request to have his "R"

status removed or lowered is not a violation of "established statutory or

constitutional rights of which a reasonable person would have known." *See*

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  In

fact, the undersigned finds just the opposite, the law clearly reads that prisoners

have no constitutional right to a certain classification or security level.

**B.     Equal Protection.**

Plaintiff asserts inmates who are within three years of their parole

consideration or release dates are recommended for min-in or min-out custody;

however, he claims Defendants discriminated against him by denying him a

recommendation for a lower security status of min-in or min-out custody –

despite that his parole consideration date was set for July 2016.  (Doc. 1 at 4-5).

He alleges that Defendant King violated his right to Equal Protection when she

"fail[ed] to recommend[] the (R) to be removed from Plaintiff['s] prison file."  (*Id.* at 4).

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike." *Hernandez v. Florida Dep't of Corrs.*, 281 F. App'x 862, 867 (11th Cir. 2008) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).  In order for a prisoner to establish an equal protection claim, he must allege: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quotation omitted).  In the prison context, interests that are protected by the Constitution from invidious discrimination are "race, religion, national origin, poverty or some other constitutionally protected interest."  *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986); *see Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir. 1976) (invidious intent is required to be shown to state an equal protection claim as mere statistical disparity is insufficient), *cert. denied*, 433 U.S. 911, 97 S. Ct. 2980, 53 L. Ed. 2d 1096 (1977).  In this Circuit prisoner plaintiffs must provide "exceptionally clear proof" of discrimination that would include a showing that they were treated differently from "similarly situated" inmates, i.e., that other inmates with similar convictions and backgrounds had their restricted status removed.  *Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988); *see also E & T Realty Co. v. Strickland*, 830 F.2d 1107, 1112-1113 (11th Cir. 1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

Defendants have properly supported their motion by producing evidence that neither Stewart nor King is responsible for determining the restricted status of inmates and, further, that neither has control to change or alter the restricted status, but instead, that power rests solely with the CRRC.  (Doc. 13-4 at 1-2; Doc. 13-2).  Alternatively, classification officers, such as Defendant King, possess the ability to request a restricted status be removed by the CRRC; by all accounts, however, this is a discretionary recommendation that King did not make for Plaintiff.  In support of Defendants, the record reveals that Plaintiff's security status had been reviewed at least twice while incarcerated.  Once, the CRRC compared its original findings to the revisions of the classification manual to determine whether or not Plaintiff should be considered a restricted offender.  The committee ruled Plaintiff should remain on restricted status based on the nature and elements of the crime(s) he committed.  Subsequently, a risk assessment was conducted, accounting for Plaintiff's prison behavior and rehabilitative classes and certifications; however, it was determined that, due to his "R" status, he should remain as a level four custody inmate.

Therefore, the burden shifts to Plaintiff to produce specific facts that would establish that the Defendants intentionally discriminated against him due to his race, religion, or other constitutionally protected interest, and Plaintiff fails to carry this burden.  Plaintiff neglects to identify any other inmate in his same position that received removal of his restricted status.  He fails to allege that any other restricted inmate was allowed a lower security level or min-in/min-out custody.  In fact, the record is completely void of comparison to any other restricted inmate's situation and of a discriminatory reason why Plaintiff believes he was denied a recommendation to have his restricted status changed.

In his complaint, Plaintiff makes the conclusory allegation that:

> Defendant [] King acted [with] prejudice and discrimination by not treating the Plaintiff [like] similarly situated [] other inmates, she has failed[ed] to recommend[] the (R) be reomove[d] from Plaintiff['s] prison file.

(Doc. 1 at 4). This bare, conclusory allegation is insufficient to state an equal protection claim or the overcome summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). The fact that other inmates within three years of their release dates and parole considerations have possibly had their restricted status removed has not been presented nor do "restricted inmates" represent a constitutionally protected class. Additionally, arbitrary application of administrative rules within a prison does not run afoul of the Constitution and is insufficient to state a claim. *E&T Realty*, 830 F.2d at 1114 ("Even arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause. *Shango*, 681 F.2d at 1104; *Jurek v. Estelle*, 593 F.2d 672, 685 n.26 (5th Cir.1979) (where plaintiff alleges "arbitrary and capricious" administration of statute, plaintiff still must prove intentional discrimination), *issue vacated without being addressed*, 623 F.2d 929, 931 (5th Cir.1980) (en banc), *cert. denied*, 450 U.S. 1014, 101 S. Ct. 1724, 68 L. Ed. 2d 214 (1981)"). Consequently, given that Plaintiff fails to even allege that other inmates with a restricted status and a similar criminal history have had their "R" status removed due to the timing of their possible release from prison, Plaintiff has failed to carry his burden of overcoming summary judgment on this claim.

C.     **Due Process.**[5]

Plaintiff appears to assert that, in determining his custody classification, Defendants failed to take into account his prison behavior and actions (which suggests a lower risk than his criminal convictions and current "R" status indicate). (*See* Doc. 15).  To the extent Plaintiff challenges the classification level assigned to him was made arbitrarily and in violation of his right to due process, his claim lacks merit.  In order to state a claim for a violation of due process, a deprivation of "life, liberty, or property" must have occurred (and be alleged) in order for due process to attach. *Wolff v. McDonnell*, 418 U.S. 539, 556-58, 94 S. Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974); *cf. Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L.Ed.2d 100 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." (emphasis in original and citations omitted)).

As discussed *supra* at section III. A., Alabama inmates have no constitutionally protected interest in the procedure dictating or affecting their classification levels because the resulting restraint, whether more or less restrictive, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  Since a prisoner's custody level

---

[5]     Plaintiff does not directly state a challenge to his right to due process under the Fourteenth Amendment, but out of an abundance of caution and leniency given to *pro se* litigants, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers..."), the Court will address such a claim.

is not a constitutionally protected interest, correctional officials may assign

Plaintiff to any classification level without implicating due process rights or

protections.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d

236 (1976).  Therefore, to successfully state a due process claim regarding the

Defendants' classification of him, Plaintiff must show that Defendants acted to

deny or restrict him a lower security status "maliciously or in bad faith."

*Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986).  Applying the facts in the

record to this standard, the Court finds the CRRC is provided with the

responsibility of determining which inmates receive a restricted offender status.

Additionally, the record clearly explains, per the CRRC's notations, that

Plaintiff's "R" status is based on the committee's view of the nature and

circumstances of Plaintiff's committed crimes.  *Id*. at 852.  The submitted

evidence also proves that the ADOC has unequivocally determined that the

CRRC's classification decisions are final and unappealable.[6]  (Doc. 13-3 at 2).

"Plaintiff's disagreement with prison officials' determination that he meets the

ADOC's current classification criteria for restricted offender status does not

render their decision arbitrary or capricious, and Plaintiff has presented no

evidence indicating that prison officials acted in an arbitrary or capricious way

by not recommending him for removal as a restricted offender."  *Hester v.*

---

[6]     The ADOC Classification Manual states the Restricted Custody "cases may be
reviewed by the Central Restriction Review Committee (CRRC) comprised of the
Associate Commissioner of Operations, the Associate Commissioner of Programs,
and/or the Director/Assistant Director of Classification or their designees.
Classification Specialists should complete the appropriate *CRRC Review Worksheet*
(See Attachments 8.5. and 8.6.) and then forward the form by email to the Assistant
Director of Classification for presentation to the committee. Decisions made by the
CRRC are final and not subject to the appeal process."  (Doc. 13-3 at 2; *see also* ADOC
Classification Manual 5.4.3.1.2).

*Thomas*, CIVIL ACTION NO: 2:12-CV-207-THM[WO], 2014 U.S. Dist. LEXIS 109850, *23-24, (M.D. Ala. July 14, 2014) (*citing Thornton v. Hunt*, 852 F.2d 526, 527 (11th Cir. 1988).

Accordingly, if Plaintiff intended to attempt to state a due process violation, he has failed to carry his burden of overcoming summary judgment and has not shown he is entitled to relief on such a claim.

**D.     Eighth Amendment.**

Plaintiff asserts that Defendants violated his Eighth Amendment right by refusing him a security level change.  (Doc. 15 at 4).  He claims that the guidelines for determining "R" status serve "no legitimate penological interest" because all that is used in the "R" custody determination are factors of a criminal case, not the positive elements of prison life and time served.  (Doc.15 at 3). Plaintiff argues the permanent "R" status forces him "to remain in a classification more dangerous and filled with risks of injury being with inmates who display behavior inconsistent with the positive aspect shown by Plaintiff," and thereby "imposes a risk to Plaintiff's safety."  (*Id*. at 4-5).  Plaintiff further claims that keeping him in a level four facility based solely on his "R" status amounts to deliberate indifference of his true classification "based upon real and honest criteria."  (*Id*. at 4).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Under the Eighth Amendment, prison officials are required to "provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).  Whether a violation exists requires a fact intensive determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent.  *Henderson v. Boyd*, 2011 U.S. Dist. LEXIS 86928, *16 (M.D. Ala., June 9, 2011) (citing *Farmer,* 511 U.S. 825)).  To establish a constitutional violation, Plaintiff must establish the complained of action denied him "the minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, and the condition under which he is held must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).  Additionally, Plaintiff must prove that the officials knew of this serious risk of harm to Plaintiff and acted with deliberate indifference by disregarding the risk. *Farmer,* 511 U.S. at 828.

In this action, Plaintiff identifies the overcrowding, interaction with more violent criminals, and the denial of rehabilitative programs and jobs as the unconstitutional conditions under which his restricted status is forcing him to be held.  These stated conditions, however uncomfortable to the Plaintiff, are not shown to be inhumane and are viewed by most as the normal and expected problems of prison life that do not rise to the level of an Eighth Amendment violation. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) ("Harsh and uncomfortable prison conditions do not automatically create such a

[constitutional] violation.); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (overcrowding, without more, does not rise to the level of a constitutional violation); *Thompson v. Cnty. of Medina, OH*, 29 F.3d 238, 242 (6th Cir. 1994) (holding that plaintiffs could not establish a violation of their Eighth Amendment right to safety where they provided no evidence of a causal relationship between the jail's classification system and their injuries).

Importantly, Plaintiff makes no allegation that Defendants denied his recommendation for "R" status removal in an attempt to inflict pain or suffering, or out of knowledge of a risk of harm to Plaintiff, or for any punitive reason. "Because the mere act of classification 'does not amount to an infliction of pain,'" the Eighth Amendment does not prohibit inmate classification. *Myron v. Terhune*, 476 F.3d 716, 719 (9th Cir. 2007) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1251 (9th Cir. 1982)). Therefore, with no facts or allegations of deliberate indifference to Plaintiff's health or safety, Plaintiff fails to carry his burden of proving an Eighth Amendment violation - as the record shows the decision to deny Plaintiff a lower security status or to classify Plaintiff as a restricted offender was and is based soundly in the criteria of the revised classification manual and does not rise to the level of a constitutional violation. Thus, Defendants are entitled to summary judgment on this claim.

**E.     *Respondeat Superior.***

Plaintiff claims Warden Cynthia Stewart is liable for failing to correct her subordinate, Classification Supervisor King, when King failed to recommend removal of Plaintiff's restricted status. (Doc. 1 at 5). Such a claim is rooted in the theory of *respondeat superior* and is not actionable. In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal

connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." *Frankum v. Chapman*, 2009 U.S. Dist. LEXIS 35267, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted).  Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*.  *See Edwards v. Ala. Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability).  Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Gonzalez*, 325 F.3d at 1235, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *5 (quoting B*raddy v. Fla. Dept. of Labor & Emp't,* 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at   , 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must

show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id*. (citations omitted).

Plaintiff alleges Defendant Stewart, as a supervisor and Warden at Fountain, knew King failed to recommend him for min-in or min-out custody and did not act to remedy the situation. Reading the facts in the light most favorable to Plaintiff, the undersigned finds no support that King or any prison official violated Plaintiff's constitutional rights by failing to recommend his restricted offender status be removed. The record instead shows that the CRRC is solely responsible for the classification of restricted offenders and that the committee upon its last review chose to retain Plaintiff's "R" status, which makes him ineligible for a lower security status. This is not a policy established by Defendant Stewart and she has no responsibility for implementing; therefore, she is not responsible for classification decisions or the execution of ADOC classification policies.[7] Therefore, the undersigned finds Defendant Stewart has

---

[7] Even if the undersigned were to find that Plaintiff's claim established a constitutional violation, Defendant Stewart would be entitled to qualified immunity from this action. Given the breadth of law announcing the lack of protected interest in an inmate's housing classification, the Court finds Defendant Stewart would not have known she was violating any law. *See Lassiter v. Alabama A&M University*, 28 F.3d 1146 (11th Cir. 1994)("Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.")

no supervisory liability, and Plaintiff has failed to carry his burden of showing a genuine issue of material fact exists for trial.

## IV.     Conclusion.

Based on the foregoing analysis, the undersigned concludes that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law on all claims and causes of action interposed by Plaintiff. Therefore, it is recommended that Defendants' motion for summary judgment be **granted** on all counts and that Plaintiff Pettway's action against Defendants Stewart and King be **dismissed** with prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in

the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 22nd day of  February 2016.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE